UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SALCO DISTRIBUTORS, LLC,

    Plaintiff,

vs.                                       Case No. 8:05-CV-642-T-27TGW

ICODE, INC.,

    Defendant.
_____/

## ORDER

**BEFORE THE COURT** is Defendant's Motion to Dismiss for Improper Venue and Alternative Motion to Transfer (Dkt. 11), Defendant's Memorandum in Support (Dkt. 12), Declaration of Ali Jani in Support of Defendant's Motion to Dismiss (Dkt. 13), and Plaintiff's Response in Opposition (Dkt. 17). Upon consideration, Defendant's motion is GRANTED in part and DENIED in part.

*Factual Background*

Plaintiff, Salco Distributors, LLC, conducts business in Florida. (Dkt. 1, Compl., ¶ 21). Defendant, iCode, Inc, is a Virginia corporation which owns "EVEREST" ("the software"), a business software product. (Dkt. 1, ¶¶ 5, 23; Dkt. 12, p. 1). In August or September, 2002, Plaintiff sought to upgrade its warehouse, billing, and inventory management software. (Dkt. 1, ¶ 21). In response to Plaintiff's inquiry, Defendant contacted Plaintiff regarding the software. (Dkt. 1, ¶ 24; Dkt. 13, Declaration of Ali Jani, ¶ 7). Defendant provided Plaintiff with promotional materials and an evaluation CD of the software. (Dkt. 1, ¶¶ 28, 31, 34, 37). The evaluation CD included a

1

complete working version of the software, including a copy of a licensing agreement required for use of the software. (Dkt. 13, ¶ 8). After using the evaluation CD, Plaintiff ordered the Software by completing, signing and returning purchase orders to Defendant. (Dkt. 1, ¶¶ 43-44). The purchase orders included the following language: "This document is bound by and subject to the conditions of the Software's End User License and Service Agreements. By signing below, you are agreeing to be bound by these terms and conditions of the sale." (Dkt. 13, Ex. C).

Defendant shipped Plaintiff the software. (Dkt. 13, ¶ 10). The software installation CD was enclosed in an envelope with the "End User License Agreement" (the "Agreement") printed on the exterior. (Dkt. 1, ¶ 45; Dkt. 13, ¶ 11; Dkt. 13, Ex. A). Prior to receiving the software, Plaintiff was not provided with a copy of the Agreement. (Dkt. 1, ¶ 46). The Agreement specified that Plaintiff would be bound by the Agreement if it opened the envelope. (Dkt. 1, ¶ 45). Plaintiff opened the envelope and retrieved the software.[1]

When Plaintiff inserted the CD into its computer, the Agreement was displayed on the screen. (Dkt. 13, ¶ 12). Plaintiff was given the option of accepting or not accepting the terms of the Agreement by clicking "I accept" or "I do not accept" before installation. (Dkt. 13, ¶ 12; Dkt. 13, Ex. B). Plaintiff was required to click "I accept" before it was permitted to proceed with installation. (Dkt. 13, ¶ 12). Plaintiff installed and registered the software with Defendant via an online registration system. (Dkt. 13, ¶ 13). The registration process required Plaintiff to click "I accept" to indicate agreement with the terms of the Agreement. (Dkt. 13, ¶ 13; Dkt. 13, Ex. D).

---

[1] According to Defendant, it was not possible to retrieve the installation CD without opening the envelope on which the Agreement was printed. (Dkt. 13, ¶ 11).

The first paragraph of the Agreement provides:

> **IMPORTANT -- READ CAREFULLY BEFORE OPENING THIS PACKAGING OR DOWNLOADING OR INSTALLING OR USING ANY PART OF THIS PRODUCT. THIS IS A LEGAL DOCUMENT THAT STATES THE TERMS AND CONDITIONS THAT GOVERN YOUR USE OF THE PRODUCT. ICODE, INC. (THE "COMPANY") IS WILLING TO LICENSE THIS PRODUCT TO YOU, THE LICENSEE ("YOU" OR "LICENSEE") ONLY IF YOU ACCEPT ALL OF THE TERMS OF THIS END USER LICENSE AGREEMENT (THE "AGREEMENT"). BY OPENING THIS PACKAGING, CLICKING YOUR ACCEPTANCE OF THE AGREEMENT DURING DOWNLOAD OR INSTALLATION OF THIS PRODUCT, OR BY USING ANY PART OF THIS PRODUCT, YOU AGREE TO BE LEGALLY BOUND BY THE TERMS OF THE AGREEMENT. <u>IF YOU DO NOT AGREE TO THESE TERMS, DO NOT OPEN THE PACKAGING OR DOWNLOAD OR INSTALL OR USE THIS PRODUCT.</u> WITHIN SEVEN (7) DAYS OF YOUR PURCHASE, RETURN THIS PRODUCT, IN ITS ORIGINAL PACKAGING, TO THE LOCATION WHERE IT WAS PURCHASED, FOR A FULL REFUND OF THE AMOUNT OF FEES YOU PAID FOR THE PRODUCT.**

(Dkt. 13, Ex. A, p. 1) (*emphasis in original*). In addition, paragraph 7 of the Agreement provides: "This Agreement will be governed by the laws in force in the Commonwealth of Virginia excluding the application of its conflict of law rules and exclusive venue for any litigation shall be in Virginia."[2] (Dkt. 13, Ex. A, p. 2, ¶ 7).

Plaintiff used the software after installation but found that the software did not operate to its satisfaction. (Dkt. 1, ¶¶ 51-67). Plaintiff filed this diversity action against Defendant, seeking monetary damages and equitable relief for breach of contract and negligent misrepresentation. (Dkt. 1). Defendant seeks dismissal pursuant to Rule 12(b)(3), arguing that the parties are bound by a valid forum selection clause. Alternatively, Defendant seeks transfer of the action to the Eastern District of Virginia. In support, Defendant argues that the parties' Agreement provides that exclusive venue for resolution of disputes is in Virginia.

### *Discussion*

Plaintiff argues that the forum selection clause in the Agreement is unenforceable because

---

[2] A document attached to a complaint can be considered on a motion to dismiss without converting the motion into one for summary judgment if the attached document is: 1) central to the plaintiff's claim and 2) undisputed. *Horsley v. Feldt*, 304 F.3d 1125, 1134 (11th Cir. 2002).

it was a material term not agreed to by the parties. Specifically, Plaintiff argues that when Plaintiff received the software, including the Agreement, the forum selection clause was a material variation in the terms of the Agreement which was not included in the parties' original contract. Plaintiff argues that the "battle of the forms" analysis under U.C.C. § 2-207 applies.[3] Defendant, on the other hand, argues that the Agreement is enforceable and is controlled by traditional contract principals under U.C.C. § 2-204.[4] This Court agrees.

In Florida and the federal circuits, shrinkwrap and clickwrap agreements are valid and

---

[3] U.C.C. § 2-207 – Additional Terms in Acceptance or Confirmation

(1) A definite and seasonable expression of acceptance or a written confirmation which is sent within a reasonable time operates as an acceptance even though it states terms additional to or different from those offered or agreed upon, unless acceptance is expressly made conditional on assent to the additional or different terms.

(2) The additional terms are to be construed as proposals for addition to the contract. Between merchants such terms become part of the contract unless:

    (a) the offer expressly limits acceptance to the terms of the offer;
    (b) they materially alter it; or
    (c) notification of objection to them has already been given or is given within a reasonable time after notice of them is received.

(3) Conduct by both parties which recognizes the existence of a contract is sufficient to establish a contract for sale although the writings of the parties do not otherwise establish a contract. In such case the terms of the particular contract consist of those terms on which the writings of the parties agree, together with any supplementary terms incorporated under any other provisions of this Act.

[4] U.C.C. § 2-204 – Formation in General

(1) A contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract.

(2) An agreement sufficient to constitute a contract for sale may be found even though the moment of its making is undetermined.

(3) Even though one or more terms are left open a contract for sale does not fail for indefiniteness if the parties have intended to make a contract and there is a reasonably certain basis for giving an appropriate remedy.

enforceable contracts.[5] *A.H. Siedle v. Nat'l Ass'n of Sec. Dealers, Inc.*, 248 F. Supp. 2d 1140, 1143 (M.D. Fla. 2003) (applying Florida law); *Management Computer Controls, Inc. v. Charles Perry Constr., Inc.*, 743 So. 2d 627, 631-32 (Fla. Dist. Ct. App. 1999); *ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1449 (7th Cir. 1996). Shrinkwrap and clickwrap contract disputes are examined by applying general contract principles. *ProCD, Inc.*, 86 F.3d at 1449. U.C.C. § 2-204 provides that "[a] contract for sale of goods may be made in any manner sufficient to show agreement, including conduct by both parties which recognizes the existence of such a contract." "A vendor, as master of the offer, may invite acceptance by conduct and may propose limitations on the kind of conduct that constitutes acceptance. A buyer may accept by performing the acts the vendor proposes to treat as acceptance." *ProCD, Inc.*, 86 F.3d at 1452.

In this case, Defendant, as the vendor, invited acceptance of its Agreement by specific conduct, namely, the installation of its software. Plaintiff, as the buyer, had the option of accepting the Agreement by installing the software. Plaintiff installed the software after having the opportunity to review the Agreement on at least three occasions and in doing so, accepted the terms of the Agreement. In addition, Plaintiff completed and signed purchase orders which included the following language: "This document is bound by and subject to the conditions of the Software's End User License and Service Agreements. By signing below, you are agreeing to be bound by these terms and conditions of the sale." (Dkt. 13, Ex. C).

Plaintiff did not question the terms, object to them, or offer any alternate terms. Defendant,

---

[5] A shrinkwrap contract refers to an agreement that becomes effective as soon as a customer removes the plastic or cellophane wrapping off of a product. *ProCD, Inc. v. Zeidenberg*, 86 F.3d 1447, 1449 (7th Cir. 1996). A clickwrap contract refers to an agreement that requires a computer user to read the agreement and click "I accept" before proceeding to the next screen or obtaining additional information.

in response to the purchase orders, sent Plaintiff the software and the Agreement. Again, Plaintiff did not question or object to the terms and did not offer any alternate terms. Rather, Plaintiff accepted the terms when it opened the software envelope, clicked "I accept" before installation, installed the software, clicked "I accept" again before registration, and registered the software with Defendant. Plaintiff confirmed its acceptance when it did not return the software for a refund after it had the opportunity to review the Agreement and the product, as provided for in the Agreement.[6]

Plaintiff's conduct was sufficient to evidence its agreement with the terms proposed by Defendant. *See* U.C.C. § 2-204(1). By installing and registering the software and not objecting to the Agreement, Plaintiff indicated its recognition of the Agreement as the parties' contract. *See id.*; *ProCD, Inc.*, 86 F.3d at 1452.

Plaintiff argues that the purchase orders constituted the parties' contract and that the Agreement included additional contract terms that it had not accepted. Plaintiff argues that the forum selection clause was a material term of the contract which altered its terms and therefore it failed to become part of the Agreement pursuant to U.C.C.§ 2-207(2)(b).[7] Contrary to Plaintiff's argument, U.C.C. § 2-207 is inapplicable. Section 2-207 addresses the terms of a contract "[w]hen the parties's (sic) conduct establishes a contract, but the parties have failed to adopt expressly a particular writing as the terms of their agreement, and the writings exchanged by the parties do not

---

[6] U.C.C. § 2-206 provides that a buyer accepts goods when, after an opportunity to inspect, he fails to make an effective rejection. This provision allows buyers the chance to make a final decision after a detailed review. *ProCD, Inc.*, 86 F.3d 1452-53. In this case, apart from the protections afforded by the U.C.C., the Agreement provided that Plaintiff could return the product for a refund within seven (7) days if it was not satisfied. Plaintiff's failure to return the software, after having the opportunity to review the Agreement in detail, was an acceptance of the terms of the Agreement.

[7] Plaintiff is correct that Florida recognizes a forum selection clause as being a material provision of a contract. *Dependable Component Supply, Inc. v. Pace Elecs., Inc.*, 772 So. 2d 582, 584 (Fla. Dist. Ct. App. 2000).

agree ...." *Step-Saver Data Sys., Inc. v. Wyse Tech.*, 939 F.2d 91, 98 (3d Cir. 1991). Here, Plaintiff and Defendant expressly adopted a particular writing as their Agreement. As noted in *ProCD, Inc.*, this is not "a battle-of-the-forms case, in which the parties exchange incompatible forms and a court must decide which prevails." *ProCD, Inc.*, 86 F.3d at 1452.

Additionally, despite the fact that the purchase orders stated that Plaimtiff was "bound by and subject to the conditions of the Software's End User License and Service Agreements," Plaintiff argues that the Agreement is not enforceable because it was not incorporated by reference into the purchase orders. "A document may be incorporated by reference in a contract if the contract specifically describes the document and expresses the parties' intent to be bound by its terms." *Management Computer Controls, Inc.*, 743 So. 2d at 631. Plaintiff's signature acknowledging the express language of incorporation on the purchase orders expresses the parties' intent to be bound by the terms of the Agreement.

Plaintiff's argument that it did not expressly accept the terms of the agreement is unpersuasive.[8] The Agreement was printed on the software envelope and appeared on the computer at the time of installation. The Agreement contained a clear warning:

> "**READ CAREFULLY BEFORE OPENING THIS PACKAGING OR DOWNLOADING OR INSTALLING OR USING ANY PART OF THIS PRODUCT. ... BY OPENING THIS PACKAGE, CLICKING YOUR ACCEPTANCE OF THE AGREEMENT OF DURING DOWNLOAD OR INSTALLATION OF THIS PRODUCT, OR BY USING ANY PART OF THIS PRODUCT, YOU AGREE TO BE LEGALLY BOUND BY THE TERMS OF THE**

---

[8] In disputing the validity of the forum selection clause, Plaintiff alleges that it was not provided with a copy of the Agreement until it received the software and did not have an opportunity to inspect or test the software before receiving the Agreement. (Dkt. 1, ¶¶ 42, 46-47). These arguments are also without merit. Plaintiff has not cited any authority for the proposition that it should have received a copy of the Agreement prior to receiving the software or that it should have been permitted to test the software it purchased. In addition, even if this were required, Defendant provided Plaintiff with an evaluation CD of the software which included a complete working version of the software and a copy of the required licensing agreement. (Dkt. 13, ¶ 8).

AGREEMENT."

(Dkt. 13, Ex. A, p. 1). Plaintiff expressly accepted the terms of the Agreement by opening, installing and registering the software and clicking "I accept." Its terms are therefore enforceable.

Having found the Agreement to be enforceable, the forum selection clause is likewise enforceable. Forum selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be unreasonable under the circumstances.[9] *M/S Bremen v. Zapata Off-Shore Co.*, 407 U.S. 1, 10 (1972) (*internal quotation omitted*). Forum selection clauses are unreasonable and unenforceable only when: "(1) their formation was induced by fraud or overreaching; (2) the plaintiff would effectively be deprived of its day in court because of the inconvenience or unfairness of the chosen forum; (3) the fundamental unfairness of the chosen law would deprive the plaintiff of a remedy; or (4) enforcement of such provisions would contravene a strong public policy." *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285, 1296 (11th Cir. 1998).

Although a plaintiff's choice of forum is afforded considerable deference, when a defendant seeks to enforce a valid, reasonable choice of forum clause, plaintiff bears the burden of establishing that the contractual forum is sufficiently inconvenient to justify retention of the dispute. *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989). Plaintiff has not questioned the validity of the forum selection clause or its reasonableness, fairness or the convenience of litigating in Virginia. Plaintiff has not established, or argued for that matter, that Virginia is an inconvenient venue. Defendant, on

---

[9] Forum selection clauses in contracts are enforceable in federal courts. *See P & S Bus. Machs., Inc. v. Canon USA, Inc.*, 331 F.3d 804, 807 (11th Cir. 2003) (citing *M/S Bremen v. Zapata Off-shore Co.*, 407 U.S. 1, 15 (1972)). "Consideration of whether to enforce a forum selection clause in a diversity jurisdiction case is governed by federal law." *Id.* (*citation omitted*). "The validity of a forum selection clause is determined under the usual rules governing the enforcement of contracts in general." *Id.* (*citation omitted*).

8

the other hand, has provided a sufficient basis to support a finding that litigating the case in Virginia would be reasonable, fair, and not unduly inconvenient.

Plaintiff has failed to satisfy its burden. Plaintiff does not allege fraud or overreaching in the procurement of the forum selection clause and does not allege that it would be deprived of its day in court if the case were litigated in Virginia or that Virginia law would deprive it of a remedy. Finally, enforcement of the forum selection clause would not contravene public policy. *See Lipcon*, 148 F.3d at 1296.

Pursuant to the parties' Agreement and valid forum selection clause, and in the interests of justice, transfer of this case to the Eastern District of Virginia is appropriate.[10] Accordingly, it is

**ORDERED AND ADJUDGED** that

Defendant's Motion to Dismiss for Improper Venue is **DENIED.** Defendant's Alternative Motion to Transfer (Dkt. 11) is **GRANTED** and this cause is transferred to the Eastern District of Virginia. All pending motions are **DENIED** as moot and the Clerk is directed to close this case.

**DONE AND ORDERED** in chambers this 21st day of February, 2006.

JAMES D. WHITTEMORE
United States District Judge

Copies to: Counsel of Record

---

[10] Transfer of the case is appropriate pursuant to 28 U.S.C. § 1406, which provides: "The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." As all of Plaintiff's claims relate to the parties' Agreement, the forum selection clause requires transfer of the entire case. *See Stewart Org., Inc. v. Ricoh Corp.*, 810 F.2d 1066, 1070 (11th Cir. 1987).